# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FIRST DISTRICT—MARCH TERM, 1880.

CHARLES H. MORSE, Impl'd, etc.

v.

ELIZA H. RICHMOND.

1. PARTNERSHIP—HOW FORMED.—Partnerships may be formed not only by express agreement, but may arise out of an arrangement for a joint business wherein the word partnership may not have been used. If there is such a joinder of interest and action as the law will consider as equivalent, and regards as in effect constituting a partnership, it will give to the persons so engaged all the rights, and lay upon them all the responsibilities, and to third persons all the remedies, which belong to a partnership.

2. AUTHORITY OF PARTNER—BORROWING MONEY.—The rule of ordinary commercial partnerships in respect to the power of one partner to give the promissory note of the firm, does not always prevail in other partnerships, or in such as are of a special and peculiar nature, as in one formed for dealing in certain real estate purchased by the partners. In the latter case there must be some proof that an express authority is given to borrow money, or that such authority is implied by the usages of the business or the ordinary exigencies and objects thereof.

3. SPECIAL AUTHORITY.—In this case, a special provision in the articles of agreement, that one of the firm "may make loan or loans, if he finds it necessary so to do, * * * and may execute mortgages or trust deeds," etc., carried with it all the ordinary incidents of securing borrowed money by mortgage or trust deed upon the lands owned by the parties interested.

(166)

Morse v. Richmond.

Appeal from the Superior Court of Cook county; the Hon. S. M. Moore, Judge, presiding. Opinion filed March 29, 1880.

Mr. W. T. Burgess, for appellant; that the signing of the note " A. B. Jackson, trustee," was a mere designation of a person, and the note, the individual promise of the maker, cited Powers v. Briggs, 79 Ill. 493; Burlingame v. Brewster, 79 Ill. 515; Little v. Bailey, 87 Ill. 239.

One of several persons interested in a joint undertaking has no power to bind the others by giving a note: Collyer on Partnership, § 402; Gray v. Ward, 18 Ill. 32.

When the act done is not within the scope and usage of similar partnerships, nor a necessary incident to the business, there must be proof of previous express consent, or subsequent ratification, to bind the other partners: Story on Partnership, § 126; 3 Kent's Com. 42; Collyer on Partnership, § 402; Brewster v. Mott, 4 Conn. 379; Marvin v. Andrus, 10 Wend. 459.

Messrs. Needham & Miller, for appellee; that to secure a review in this court, the appeal should be taken at the same term the decree is rendered, cited Rev. Stat. Chap. 110, § 68; Myers v. Manny, 64 Ill. 221.

A partnership may exist between dealers in real estate, for the purpose of buying and selling, and it will be governed substantially by the same rules as other partnerships: Williams v. Gilliss, 20 N. Y. 422; Berkshire Woolen Co. v. Juillard, 20 N. Y. 506; Fall River Whaling Co. v.———, 10 Cush. 458; Dudley v. Littlefield, 21 Me. 418; Dale v. Hamilton, 5 Hare. 383; Story on Partnership, 169.

The business may be done in the name of one of the partners, and all the members will be bound: Bissell v. Harrington, 25 N. Y. 81; Collyer on Partnership, 221.

Persons who are known to share in the profits of a trade, are *prima facie* liable to parties who deal with them in respect of that trade, whatever be the private agreement between them: Collyer on Partnership, § 81; Story on Partnership, § 36; Faulds v. Yates, 57 Ill. 416; Green v. Beesley, 2 Bing. New

Cas. 108; Freemont v. Coupland, 2 Bing. 170; Boggs v. Olcott, 40 Ill. 303; Niehoff v. Dudley, 40 Ill. 406; Pettis v. Atkins, 60 Ill. 454; Poole v. Fisher, 62 Ill. 181; Stark v. Corey, 45 Ill. 431; Peine v. Weber, 47 Ill. 41; Story on Partnership, § 138.

McAllister, J. In March, 1873, the appellant Morse was jointly interested with Andrew B. Jackson in suburban real estate, acquired for the purpose of laying the same out into lots, improving and selling. The manner of carrying the enterprise into effect was the placing of the legal title in Jackson, as trustee, under an express trust by deed, to which Morse with others was a party, giving Jackson as such trustee the entire management and control under the following powers and duties:

"To subdivide, lay out and plat said premises, or any part thereof, into lots and blocks, and to expend whatever money he deems best in improving and making said premises saleable for village or town lots, and to sell and convey, by good and sufficient deeds, said premises or any part thereof, at public or private sale, upon such terms as he may deem best.

" In case of sale on credit, the deferred payments to be secured by an encumbrance back upon the part so sold.

"And also, make loan or loans, if he find it necessary so to do, in order to lay out and improve said premises, or pay off and satisfy the indebtedness now on said premises, and in order to secure said loan or loans, he may execute mortgages or trust deeds on such portion or part of said premises as he may deem most advisable."

Provides for the rendering of half-yearly accounts of his acts, etc., and a division of money, notes or securities received by him for such premises, among the following *cestuis que trust:* a 7-18 part to Charles H. Morse, a 4-18 part to Isaac R. Hitt, and a 7-18 part to be retained by said Andrew B. Jackson, etc.

"And upon the further trust, that upon Feb. 28, 1877, second party shall render a final account in the premises, and thereupon all moneys, notes, claims and demands, held by him on

account of said premises, and all property, if any, remaining unsold, shall be divided between the said Morse, Hitt and Jack-son, in the proportions last above mentioned," etc.

Hitt sold out his interest to Jackson and Morse, so that the latter became sole parties interested. Afterwards, in June, 1874, Jackson as such trustee, and for the purposes of the business above mentioned, borrowed of appellee the sum of $2,080, for which he executed a note payable to his own order in one year, and signed it "Andrew B. Jackson, trustee;" to secure which he, in his own right and as trustee, executed a trust deed covering a portion of said trust property to Andrew Richmond, for the benefit of appellee, to whom Jackson endorsed said note. The latter having died, appellee filed his bill to foreclose, alleging the partnership, that it was carried on in the name of Andrew B. Jackson, trustee, and that he and Morse made the said note as partners. Morse filed his answer denying the material allegations of the bill, and on the hearing upon pleadings and proofs, a decree passed holding Morse personally liable with Jackson in the borrowing the money and giving said note, and there being a deficiency, he was decreed to pay it. From that decree he appealed to this court.

After a careful consideration of the evidence in this case, we think the decree below was right; that there was such a community of interest in the enterprise as in law to constitute a partnership; but of that peculiar sort that in the absence of an express authority to borrow money, and of evidence of usage, authority would not be implied for Jackson to borrow money, and give bills or notes which would be binding upon Morse without his privity or assent.

Ulery v. Ginrich, 57 Ill. 531, presented the case of a partnership for farming purposes; and where one of the partners had given a promissory note in the name of himself and co-partner, without the privity or consent of the latter, the court, after stating the rule in respect to ordinary commercial partnerships in that regard, said: "But the same rule does not always prevail in all other sorts of partnership, or in such as are of a special and peculiar nature. Thus, if a partnership is organized for mining or farming purposes, the directors or active

agents thereof will not, as incident thereto, possess a power to draw or accept bills, or draw or endorse notes for the company. In such cases there must be some proof that an express authority is given for this purpose, or that it is implied by the usages of the business, or the ordinary exigencies and objects thereof." Story on Part. Sec. 102, 126; Collyer on Part. Book 3, Chap. 1, Sec. 2, p. 269. To the same effect is Gray v. Ward, 18 Ills. 32. See, also, Parsons on Part. 108 cases in note Y. In Hawtyne v. Bourne, 7 Mees. &. Welsb. 595, the action was brought by the plaintiffs, who were bankers, to recover of the defendant one of the proprietors in a mining company, for money lent and advanced by plaintiffs to the agent appointed by the company of proprietors for the management of the mine. Baron Parke, in delivering the opinion of thé court, said: " Now, the extent of the authority conferred upon the agent by his appointment, was this only: that he should conduct and carry on the affairs of the mine in the usual manner. There is no proof of express authority to borrow money from bankers for that purpose, or that it was necessary, or in the ordinary course of the undertaking, and certainly no such authority could be assumed."

But in this case at bar, the authority had been expressly conferred upon Jackson to borrow money, by the declaration of trust in the deed to which Morse was a party; " and also make loan or loans, if he finds it necessary so to do, in order to lay out and improve said premises, or pay off and satisfy the indebtedness now on said premises, and in order to secure said loan or loans, he may execute mortgages or trust deeds on such portion or part of said premises as he may deem advisable."

There are certain powers incident to every authority, unless the principal has taken the precaution of forbidding their exercise. Amongst such powers are those which enable the agent to employ all the necessary and usual means of executing the principal authority with effect. Ewell's Evans on Agency, 108, and cases in note 1. On this principle, it was held in Hatch v. Coddington, 5 Otto, 48, that a general power to borrow money carried with it the incidental authority to give to the lender ordinary securities for the sum borrowed.

Partnerships may be formed, not only by express agreement, but arise out of an arrangement for a joint business wherein the word partnership may not have been used.  If there is such a joinder of interests and action as the law will consider as equivalent, and regards as in effect, constituting a partnership, it will give to the persons so engaged all the rights, and lay upon them all the responsibilities, and to third persons all the remedies, which belong to a partnership.   Pars. on Part. 9.

As before said, we think the arrangement in question such a joinder of interest and action, as the law will regard as constituting a partnership, but one of that peculiar sort which, in the absence of evidence of usage and in the absence of an express authority, would not imply authority in Jackson to borrow money and bind his co-partner by giving a bill or note, but the express power contained in the instrument defining their relations, supplies that requirement within the doctrine of all the authorities above cited.   The broad power to make loan or loans, if he found it necessary so to do in order to improve the property or pay off debts, carried with it the authority to give the lender all ordinary securities, notwithstanding the further power that he might execute mortgages or trust deeds on such of the premises as he should deem advisable. This cannot be construed as excluding all implied authority in other respects; that power carries with it all the ordinary incidents of securing borrowed money by mortgage or trust deed, one of which is a note or bond evidencing the debt.   The decree of the court below will be affirmed.