[No. 12208.    Department One.    February 8, 1915.]

## C. E. COOK et al., Respondents, v. WASHINGTON-OREGON CORPORATION, Appellant.[1]

APPEAL—REVIEW—OBJECTIONS NOT URGED BELOW—AMENDMENTS. In an action to foreclose a laborer's lien, an objection that the record does not show that any copy of the lien notice was served as required by law, comes too late when first made on the hearing of the appeal, Rem. & Bal. Code, § 1752, requiring the supreme court to disregard any defect in the pleadings that might have been cured by amendment, and fairness to counsel and the court requiring that the point be urged in the court below and in appellant's brief on appeal.

APPEAL—REVIEW—ABSENCE OF FINDINGS—PRESUMPTIONS. No findings of fact being necessary in an equity case, incomplete findings are not ground for reversal, and the correctness of the judgment will be presumed, in the absence of a statement of facts or any affirmative showing in the record of prejudicial error.

MASTER AND SERVANT—LIENS FOR LABOR—ON OPERATING PROPERTY IN POSSESSION OF LESSEE—INTERESTS SUBJECT. Under Rem. & Bal. Code, § 1149, giving a lien to any person performing labor for any person or corporation operating specified property (including mines), upon all the real and personal operating property thereof, the lien is confined to the interests of a lessee of a mine, in possession and holding also under a conditional sales contract, where the lessee employed the lien claimants, none of whom performed labor for the owner and lessor.

SALES—CONDITIONAL SALES—FILING—NECESSITY—LIENORS OR SUBSEQUENT CREDITORS. Where a conditional sales contract of the personal property used in operating a mine was not filed in the auditor's office within ten days after taking possession, it is, under Rem. & Bal. Code, § 3670, deemed to be an absolute sale as to subsequent creditors, which include subsequent claimants for liens for labor performed in the operation of the mine.

[1]Reported in 146 Pac. 156; 149 Pac. 325.

MASTER AND SERVANT—LIENS FOR LABOR—PROPERTY SUBJECT—REAL OR PERSONAL PROPERTY—DECREE. Motors, pumps, railroad rails, coal cars, a mule, and a blacksmith's outfit, used in operating a coal mine, are to be classed as personal property in a decree establishing labor liens; while bunkers and all necessary wiring are to be classed as real property; but "other equipment about the mine" is too general a designation to be sufficient in an involuntary lien, without other specific designation in the decree establishing the lien, where it was found that only the personal property was subject to the lien.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered January 2, 1914, upon findings in favor of the plaintiffs, in an action to foreclose labor liens. Modified.

*Forney & Ponder, Charles A. Johns,* and *Hayden, Langhorne & Metzger,* for appellant.

*Albers & Allen,* for respondents.

HOLCOMB, J.—This is an action brought to foreclose certain labor liens on the mining machinery, equipment, and material used in and about the operation of a certain coal mine, which was leased by appellant, Washington-Oregon Corporation, to the defendant Snyder, on November 12, 1912. The liens are claimed and filed and this action brought under Rem. & Bal. Code, § 1149 (P. C. 309 § 117), which is as follows:

"Every person performing labor for any person, company or corporation, in the operation of any railway, canal or transportation company, or any water, mining or manufacturing company, sawmill, lumber or timber company, shall have a prior lien on the franchise, earnings, and on all the real and personal property of said person, company or corporation, which is used in the operation of its business, to the extent of the moneys due him from such person, company or corporation, operating said franchise or business, for labor performed within six months next preceding the filing of his claim therefor, as hereinafter provided; and no mortgage, deed of trust or conveyance shall defeat or take precedence over said lien."

The lease to Snyder also contained a conditional right to purchase the mining machinery, equipment, and material used in and about the operation of said mine from the appellant. Under said lease and conditional sale contract, Snyder took possession of said mine and machinery and equipment, and proceeded to operate the mine until about April 4, 1913. The lease and conditional sale contract was filed in the office of the county auditor of Lewis county January 28, 1913, more than ten days after its execution. During the time Snyder was operating the mine, he became indebted to the plaintiffs herein, and to other laborers who assigned their claims to plaintiffs (respondents) before the commencement of the action, for labor performed in the operation of the mine in the sum of $1,527.14, as found by the court. Defendant Snyder abandoned the mine on April 4, 1913, failed to pay the laborers, and left the state, and appellant re-entered and took possession of the mine and equipment as of its former estate.

No statement of facts was filed within the statutory time, and the questions presented must be governed by the pleadings, findings of fact, conclusions of law and judgment of the trial court.

Appellant urges upon appeal that the record does not show that any copy of the lien notice was served upon appellant, or upon the defendant Snyder. The record before us is silent as to that requirement of the lien statute governing this case, Rem. & Bal. Code, § 1150 (P. C. 309 § 119). The objection, however, comes too late. It was urged for the first time, so far as we can determine, at the time of the hearing of the case on appeal in this court. The complaint alleged the service of a copy of the lien notice upon appellant, and was silent as to service of any copy of the lien notice upon defendant Snyder. It is true, appellant demurred to the complaint, and the demurrer was overruled. After trial in the court below, both respondents and appellant proposed. findings of fact and conclusions of law. The court adopted

findings and conclusions in respondents' favor. The findings proposed by both parties were silent on the matter of the service of copy of lien notice upon either party. Waiving the question of whether or not appellant could take advantage of the failure of the lienors to serve the statutory copy of notice of lien upon the "employer," it is manifest that appellant did not urge the point in the court below. Appellant's opening brief on appeal does not raise the question. Fairness to the adverse party, and to the trial court, forbids any such dilatory practice. Had the point been urged to the court below, that court could, and doubtless would, have determined the matter properly. If the defect respecting defendant Snyder was jurisdictional as to the entire proceeding, it was such a matter as was amendable, if the facts so warranted, to show proper service of copy of lien notice. We have repeatedly held that:

"Where a case has proceeded to judgment, we will not consider any defect in the pleadings that might have been cured by amendment, but will, as admonished by Rem. & Bal. Code, § 1752 (P. C. 81 § 1255), decide the case on the merits, disregarding all technicalities, and consider all amendments which could have been made as made." *Yeisley v. Smith,* 82 Wash. 693, 144 Pac. 918; *Kelly v. Lum,* 75 Wash. 135, 134 Pac. 819, 49 L. R. A. (N. S.) 1151.

No findings of fact are necessary in an equity case. *Potvin v. Blasher,* 9 Wash. 460, 37 Pac. 710; *White Crest Canning Co. v. Sims,* 30 Wash. 374, 70 Pac. 1003. Since no statement of facts is brought to us on appeal, the correctness of the judgment, at least so far as the facts are concerned, will be presumed, in the absence of any affirmative showing in the record of prejudicial error. *Slyfield v. Willard,* 43 Wash. 179, 86 Pac. 392; *Gould v. Austin,* 52 Wash. 457, 100 Pac. 1029; *Clambey v. Copland,* 52 Wash. 580, 100 Pac. 1031. Incomplete or defective findings are not ground for reversal in an equity case, since no findings are necessary to support the decree. *Clambey v. Copland, supra.*

Under the law applicable to this case, however, the judg-
ment cannot be sustained entirely, unless the property sub-
ject to the lien is real or personal property of Snyder, the
employer.  If real property, except as to the leasehold term,
it belongs to appellant, for title to it never passed to Snyder.

Respondents' liens were claimed under Rem. & Bal. Code,
§ 1149 (P. C. 309 § 117), giving liens to "every person per-
forming labor for any person, company,  .  .  .  on the
franchise, earnings, and on all the real and personal prop-
erty of said person  .  .  .  which is used in the operation
of its business, to the extent of the moneys due him from
such person  .  .  .  operating said franchise or business,
for labor performed within six months next preceding the
filing of his claim of lien therefor  .  .  ."  These lienors
were employed by defendant Snyder, who was then the lessee
of the mine, holding also a conditional right of purchase
upon complying with certain terms and obligations of pay-
ment, which he did not perform.  The appellant never em-
ployed the respondents, nor did they perform any labor for
appellant.  Defendant Snyder was in possession of the mine
and the machinery and equipment used in operating the
mine, from and after November 12, 1912, until April 4, 1913,
during which period respondents performed the labor for
which they claimed the liens.  Snyder's real estate interest
was his leasehold interest, including whatever was real prop-
erty during that period.  Respondents undoubtedly have a
lien under the statute relied on upon all the personal prop-
erty possessed by Snyder and used in the operation of the
mine.  Although appellant insists that the mining machinery
and equipment were part of the realty to which appellant re-
tained title, we cannot so consider it.  The principal items
of property were, one fifty-horse power motor; one five-horse
power motor; four coal cars and haul cable; three pumps;
one washing outfit and screen; about 1,400 feet of pipe; one
set of blacksmith tools; one bay mule; the coal bunkers at the
mine; one ton of railroad rails, and all necessary wiring and

other equipment about the mine.    The trial court found that
the motors, pumps, railroad rails, coal cars, mule, and black-
smith outfit, had been removed from the mine by appellant,
and part of it removed from the state by appellant after the
filing of the liens.    If said property was personal property,
Snyder being in possession under a conditional sale contract
which was not filed for record within ten days after he was
placed in possession thereof, under Rem. & Bal. Code, § 3670
(P. C. 349 § 35), the sale must be treated as absolute as to
these lienors, who are subsequent creditors in good faith.
*American Multigraph Sales Co. v. Jones,* 58 Wash. 619, 109
Pac. 108; *Worley v. Metropolitan Motor Car Co.,* 72 Wash.
243, 130 Pac. 107; *First Nat. Bank of Everett v. Wilcox,*
72 Wash. 473, 130 Pac. 756, 131 Pac. 203; *Chilberg v.
Smith,* 174 Fed. 805.

Nor does the rule laid down in *Doe v. Tenino Coal & Iron
Co.,* 43 Wash. 523, 86 Pac. 938, relied upon by appellant, de-
fining certain classes of movable property as real estate for
the purpose of taxation, sustain appellant's contention, for
that decision rested upon the definitions of real and personal
property for the purpose of assessment and taxation in the
revenue and taxation statutes (Bal. Code, §§ 1656 and 1698;
Rem. & Bal. Code, §§ 9092, 9112; P. C. 501 §§ 17, 113),
and the earlier decision in *Eureka District Gold Min. Co. v.
Ferry County,* 28 Wash. 250, 68 Pac. 727, where it was held
that, when the property all belonged to the person or com-
pany assessed and "the items of personal property were so
inconsiderable in amount as compared with the value of the
real estate that they did not really enter into the estimate
of valuation," it was not necessary to segregate them into
classifications of real and personal property.    If it be deter-
mined by actual conduct, as well as by constructive intent of
the parties, what better evidence is there that the items of
property in controversy were movable personal property, and
so intended, than that they were actually removed from the
mine by appellant, and a part of same removed to another

state? We consider said items to have been personal property as found by the trial court. The coal bunkers and "all the necessary wiring and other equipment about the mine," as expressed in the decree of foreclosure, seem to us to have the characteristics of real property, so far as the coal bunkers and wiring are concerned. They must surely be attached to and constitute structures and improvements on the real estate. "Other equipment" is too general and loose a designation to be sufficient in an involuntary lien without other specific designation. *Dexter Horton & Co. v. Wiley*, 2 Wash. 171, 25 Pac. 1071.

The decree will be modified to omit therefrom the lien and judgment against the coal bunkers, all necessary wiring, and other equipment about the mine. In all other respects, the judgment is affirmed. Respondent will recover costs.

MORRIS, C. J., PARKER, CHADWICK, and MOUNT, JJ., concur.

## ON REHEARING.

[Decided June 15, 1915.]

PER CURIAM.—In this cause an opinion was filed on February 8, 1915. The remittitur was sent down on March 12, 1915. Thereafter, on April 29, 1915, respondents filed in this court a motion to recall the remittitur for the purpose of correcting the same in accordance with the opinion. The appellants filed an answer, conceding that the remittitur is erroneous and should be corrected. The remittitur sent down gave judgment against the appellants Washington-Oregon Corporation and Globe Indemnity Company, its surety, in favor of the respondents, for the total sum of $1,527.14, with interest from April 4, 1913, and "that the plaintiffs recover the further sum of $1,188.03, with interest thereon from January 2, 1914, until paid." This is erroneous and, diligent application having been made therefor, must be corrected.

Respondents are entitled to judgment in their several amounts against defendant Snyder and the liened chattels, omitting the coal bunkers, all necessary wiring, and other equipment, in the total sum of $1,527.14, with interest at the legal rate from April 4, 1913, and $104.10 allowed as costs, with interest at the legal rate from January 2, 1914.

Respondents are entitled to judgment against appellants Washington-Oregon Corporation and the Globe Indemnity Company, its surety, or either of them, for the total sum of $1,188.03 principal, attorney's fees, and costs of lien, together with costs of action, with interest thereon at the legal rate from April 4, 1913, as part of the aforesaid judgment for $1,527.14.

The remittitur will be corrected accordingly.