[No. 21229.  Department Two.  October 18, 1928.]

A. KEANE *et al., Appellants,* v. THOMAS B. WATSON
COMPANY *et al., Respondents.*[1]

[1]Reported in 271 Pac. 73.

*George F. Hannan,* for appellants.
*E. M. Farmer,* for respondents.

HOLCOMB, J.—In March, 1926, a written contract was entered into between Seahurst Water Company, a corporation, and Thomas B. Watson, an individual, by the terms of which Watson agreed to dig a well for the water company that would produce three hundred gallons of water per minute. This well was not finished, and in July, 1926, it having become necessary to use the water that had been produced in that well for the residents of Seahurst Park, a community for which the water company furnished water, the water company entered into a new written contract with Thomas B. Watson, Incorporated, a corporation, by the terms of which the digging operations were suspended to be resumed November 1, 1926, so that use might be had of the water in the first well. Under the terms of this last agreement, four hundred dollars was paid on account.

The digging of the well was resumed in November, 1926, and respondent Thomas B. Watson, Incorporated, employed these lien claimants to do the work and it is alleged that it was agreed to pay each of them five dollars per day. They performed their work between November, 1926, and January, 1927, except

Osburn, who acted as foreman during the latter operations for Thomas B. Watson, Incorporated, who worked until February 14, 1927. They were paid nothing for their work, and on February 28, 1927, they jointly filed a lien, each for the amount of work due him, against the property of the Seahurst Water Company upon which the Seahurst Land Company held a mortgage for ten thousand dollars. Their total claims amounted to $808.74. There is no dispute as to the time each man worked and the rate of pay he was to receive.

In January, 1927, a dispute arose between the Watson Company and the Seahurst Water Company. It was found by the Watson Company that it was impossible to produce a three hundred gallon well at the place where it had been attempted. The Watson Company ceased operations and paid none of the claims.

The Seahurst Land Company, a corporation, organized in 1897, originally owned the land in question. In 1919, the Seahurst Water Company, a corporation, was organized with a capital stock of ten thousand dollars. All of the stock of the water company is owned by the Seahurst Land Company, with the exception of three qualifying shares owned by each of the directors. The Seahurst Water Company and the Seahurst Land Company have the same board of directors. One Kiesel is the manager for both companies. Upon the organization of the water company, the land company conveyed to it seventeen acres of land used for the water system and as a water shed for the protection of the water supply and the water company gave to the land company a mortgage for ten thousand dollars.

The records show that the land company pays the bills of the water company and charges them to the water company. The money paid in by water users is collected by the land company and credited to the

water company. When a pump was bought, in May, 1926, for use in the water system of the companies, the land company paid for the pump. One Porter, who was superintendent of the water company for twelve or thirteen years, testified that his checks all came from the land company and that, while he was superintendent, he had direct charge of ordering and receiving all materials, and all materials bought were paid for by the land company. Kiesel, who, as stated, had been manager for both companies for years, testified that the reason for the formation of the water company was because the land company was obligated to furnish water to its purchasers of lots.

The title to the land upon which the labor was performed is in the water company, subject to the mortgage mentioned.

Upon a trial to the court, the court entered judgment foreclosing plaintiffs' liens to the extent of four hundred dollars ''divided among them'', and costs, and allowing attorney's fee of fifty dollars to lienors' attorney. A judgment for the entire amount of $808.74 and costs was granted against Thomas B. Watson Company, a corporation, including fifty dollars attorney's fees, and interest from January 29, 1927.

The liens were claimed by appellants against the whole tract of seventeen acres, more or less, described therein and which constitutes the land transferred by the land company to the water company, subject to the mortgage in question. The trial court held that the mortgage from the water company to the land company was prior and superior, and made the judgment of foreclosure of the liens for four hundred dollars, with attorney's fees and costs, inferior and subject to the mortgage.

In summing up the evidence, produced before him, the trial court, among other things, said:

"They [Watson Co.] decided that they never would get the amount of water in it [that is the original hole] that was understood or they [Watson Co.] thought they could get, but did go to the other place and they dug this new well."

The court also said:

"Now, in the fall, instead of starting in on the old well and improving it and making it produce this 300 gallons, they started in a new place on a new well. There was no contract at all about that, unless the parties meant that it should be covered by the same terms as the contract for finishing up that old well."

Both the lienors, by appeal, and the Seahurst Water Company, a corporation, and the Seahurst Land Company, a corporation, by joint cross-appeal, are here appealing.

Appellants rely upon Rem. Comp. Stat., § 1129, which in part reads:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any . . . well . . . has a lien upon the same for the labor performed . . . whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter: . . ."

In view of this statute, there can be no doubt that a mechanic's lien may be claimed for labor upon a well. See *Lee v. Kimball*, 45 Wash. 656, 88 Pac. 1121.

Under Rem. Comp. Stat., § 1130, the lot, tract or parcel of land upon which the improvement is made or the property is situated, or so much thereof as may be necessary to satisfy the lien and the judgment thereon, to be determined by the court on rendering

judgment in a foreclosure of the lien, is also subject to the lien.

Under the evidence in this case, the seventeen acres used for the water system of the land and water Companies is necessary for the operation and protection of any well that might be developed thereon and necessary to satisfy liens for the construction thereof.

We therefore agree with the trial court that the seventeen acre tract was properly subject to a judgment for the foreclosure of the liens.

The cross-appellants insist that there is no designation of any particular portion of this seventeen acres by appellants in their liens or in their complaint and that the liens were, therefore, fatally defective, and objected to any evidence being introduced by appellants under their so-called mechanic's lien notice.

In the same connection, it is also urged by cross-appellants that the court erred in overruling their motion to dismiss the action as to the land and water companies, and in overruling their demurrer and their objection to the admission of any testimony on the part of appellants.

Cross-appellants contend that the lien notices filed by appellants are lien notices under the employees' lien act. Rem. Comp. Stat., § 1149, *et seq.*

Section 1149 of that act provides for liens against the property of persons or corporations and against the franchise, earnings and all real and personal property of such persons and corporations used in the operation of the business for labor performed within six months preceding the filing of the claim and that no mortgage, deed of trust, or conveyance shall defeat or take precedence over such lien.

Section 1150 provides that such liens shall be claimed within ninety days after the cessation of the performance of labor, and that the claimant shall serve a copy

of his lien on the person or corporation within thirty days after the notice of lien is filed for record.

The lien notices herein are in the ordinary form prescribed by Rem. Comp. Stat., § 1134, for mechanics' and materialmen's liens. They add the statement that liens were claimed also against the franchises, earnings and all the real and personal property of the companies. No copies of the lien notices were served upon cross-appellants within thirty days or at all.

An examination of the lien notices herein discloses that they are sufficient to claim the liens provided for under the mechanics' and materialmen's lien law, § 1129, *et seq., supra.* The further claims of liens against the franchises, earnings and real and personal property of the corporations were mere surplusage, and if ever intended by the claimants, were abandoned at trial. This was permissible. *Heal v. Evans Creek Coal & Coke Co.,* 71 Wash. 225, 128 Pac. 211.

The contention of the cross-appellants that the complaint was not sufficient to justify this evidence and relief is not good.

The court advised counsel that all evidence on behalf of both sides would be received, and both sides produced their evidence. Cross-appellants claimed no surprise and asked for no continuance.

"It would be an idle formality to remand this cause for amendment of the complaint and a retrial upon the same evidence now before us to the end that a formal decree of reformation be entered preliminary to judgment." *Gaskill v. Northern Assurance Co.,* 73 Wash. 668, 132 Pac. 643.

See, also, *Cook v. Washington-Oregon Corporation,* 84 Wash. 68, 146 Pac. 156; *Brace & Hergert Mill Co. v. Burbank,* 87 Wash. 356, 151 Pac. 803; *Hubbard v. Hartford Fire Ins. Co.,* 135 Wash. 558, 238 Pac. 569.

See, also, Rule III, § 9, Rules of Procedure and Practice, 140 Wash. xxxviii (Rem. 1927 Sup., § 308-9).

We think the trial court erred in holding that there was no new contract on the second well, or that it was necessary there be any express contract at all about that. The operation of digging a well on the first site had been suspended and there was no contract specifying any particular site in any event. All the contract provided for was the digging of a well to produce a certain quantity of water. Although no well was dug which produced the required quantity of water, that was not the fault of the laborers. They performed the labor required of them and, as the trial court said, earned all they claimed. Watson was the agent of the owner of the land for the purpose of the construction of the well under the terms of Rem. Comp. Stat., § 1129; and when such agent employed men to perform labor upon the well, he subjected the necessary land and the owner thereof to the operation of the law, which provides for direct liens for which the laborer has a lien for the full amount of his wage regardless of the contract between the owner and the contractor. *Spokane Mfg. & Lumber Co. v. McChesney,* 1 Wash. 609, 21 Pac. 198; 18 R. C. L. 874.

We are of the opinion that the liens should have been established for the full amount agreed of $808.74 with interest and costs and that the attorney's fees allowed should have been double that which was allowed, or one hundred dollars.

A very serious question is presented as to whether claimants' liens should be declared prior and superior to the $10,000 mortgage of the Seahurst Land Company.

As we have shown in our statement of the facts, it seems that the two companies are practically one and the same company. They have the same stockholders,

directors and general manager. Their accounts are paid out and received for and on behalf of each other.

The above facts being true, we conclude that this case falls within the rule announced in *Platt v. Bradner Co.,* 131 Wash. 573, 230 Pac. 633, and exceptions recognized in *First National Bank v. Walton,* 146 Wash. 367, 262 Pac. 984; and that the mortgage is not entitled to any preference over the liens of the mechanics and materialmen against the premises.

We conclude that the judgment should be reversed, and a decree entered for the full amount claimed by the lien holders, together with one hundred dollars attorney's fees, interest from January 27, 1926; and, that the liens be established as prior and superior to the mortgage of the Seahurst Water Company to Seahurst Land Company. Appellants will recover costs.

FULLERTON, C. J., BEALS, ASKREN, and PARKER, JJ., concur.