## BRIDGMAN v. WINSNESS.

No. 1913. Decided November 11, 1908 (98 Pac. 186).

1. PARTNERSHIP—MEMBERS—EVIDENCE. Evidence *held* to support a finding that a person was at his death a member of a partnership embracing himself and son.

2. PARTNERSHIP—PROOF OF EXISTENCE OF RELATION—ESTABLISHMENT BY CIRCUMSTANCES. The existence of a partnership may be implied from circumstances, especially where they not only tend to show the relation, but are inconsistent with any other theory.

3. PARTNERSHIP—EVIDENCE—ADVERTISEMENT FROM CITY DIRECTORY. In an action to recover property of a business as the individual property of plaintiff's decedent, a paragraph from a city directory, containing an advertisement mentioning decedent and his son as the proprietors of the business was admissible to show a partnership between decedent and his son in the business, where it appeared that decedent was a party to the transaction whereby the advertisement was inserted in the directory.

4. PARTNERSHIP—EVIDENCE—REPORT TO MERCANTILE AGENCY. In an action to recover property of a business as the individual property of plaintiff's decedent, a business statement to a mercantile agency, signed by decedent, which referred to himself and son as "partners and officers" of the firm, was admissible to show a partnership in the business between father and son.

5. WITNESSES — INCONSISTENT STATEMENTS — CROSS-EXAMINATION. In an action to recover property of a business as the individual property of plaintiff's decedent, where decedent's son on his direct examination stated that he and his father had dissolved partnership prior to his· father's death, and that the property belonged to his father, testimony elicited from him on cross-examination, that he had at other times asserted that he himself was the owner or part owner of the property, was competent to impeach his testimony on direct examination.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by Michael J. Bridgman, administrator of William Pender, against George Winsness, administrator of Fred Roberts. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Booth, Lee & Badger* for appellant.

*Henderson, Pierce, Critchlow & Barrette* for respondent.

McCARTY, C. J.

William Pender and James Pender, father and son, began the foundry business as partners about the fall of 1890, under the name of "Murray Iron Foundry, William Pen-

der & Son." It is claimed by appellant—and there is evidence in the record which tends to support his contention—that on or about December 3, 1894, James Pender sold his interest in the business to his father, William Pender, and that the partnership was thereby dissolved. The record shows that from this time on, until the departure in the early part of 1897 of William on his mission, which took him from the State for abou⁺ eighteen months, the business was run as "Murray Iron Foundry, William Pender." After the alleged dissolution of partnership, James Pender continued to work for the concern under a salary. During the time when it is conceded that William and James Pender were conducting the business as partners, they became indebted to one Fred. Roberts for scrap iron which they had used in the business. To secure the payment of this indebtedness they gave Roberts their notes secured by a mortgage on their property. The notes and mortgage were renewed from time to time and continued in force until after the death of William Pender. There were four children: James, Samuel, Janie and another. James and Samuel worked in the foundry, and Janie kept the books of the concern. During the time William Pender was away on his mission, James Pender was in charge of and superintended the management of the business. He changed the name of the firm from William Pender to William Pender & Son. The name, as thus changed, was printed on the office window, and was also printed on the letter heads and other stationery used in the business. The bank account, however, remained in the name of William Pender up to the time of his death. James collected accounts, and he also issued a few checks against the bank account signed "William Pender, Per James." Most of the checks, however, were issued by Janie. Evidence was introduced which tended to show that the change in the name of the business was made by James with the knowledge and consent of his father, William Pender. The testimony given by plaintiff's witnesses showed that, before William Pender went on his

mission, and after he returned therefrom, James claimed an interest in the business and insisted on his father giving him a "writing of partnership," and that on one of these occasions William Pender told James that, when he (William) returned from his mission, he would give him "this partnership interest." On another occasion, when James was insisting that he be given a writing defining what he claimed as his interest. William Pender put him off by saying that Samuel, who was younger than James, was "growing up," and that he wanted Samuel to have an interest in the business, and there is not a scintilla of evidence which tends to show that William Pender on any of these occasions ever denied that James owned an interest in the business. After William Pender returned from his mission, James mortgaged his home for $500, which he put into the business. It also appears from the evidence that they advertised in Polk's directory for Salt Lake City under the name and style of William Pender & Son, and that the accounts for advertising "were rendered to William Pender & Son and were paid for by them." The record further shows that a report showing the financial standing or rating of the firm or business was given to R. G. Dun & Co., a commercial agency, in April, 1899, in which William and James Pender are referred to as "partners or officers." The evidence tends to show that this report was signed "William Pender & Son" by William Pender himself. In fact, the undisputed evidence shows that from about the time William Pender departed on his mission, until his death, which occurred March 8, 1902, the business was carried on under the name and style of "Murray Iron Foundry, William Pender & Son." After the death of William Pender, the business was managed and carried on with James Pender in charge, and in the bill of sale hereinafter referred to, which was executed by the Penders, and which purported to transfer the title and right of possession to the property in question, the business was described as "the firm of William Pender & Son."

Fred. Roberts, who was a creditor of William Pender &
Son, entered into negotiations with the heirs of William
Pender for the purchase of the entire business operated
under the name of William Pender & Son, including its
good will.   Terms were agreed upon, whereby Roberts ac-
quired control of the business, and, in consideration there-
for, he paid to the heirs of William Pender $1,000 in
money and assumed and agreed to pay all debts owing by
the concern, and agreed to cancel all claims held by himself
against William Pender & Son.   The heirs of William
Pender, including James, all joined in the execution of a
deed purporting to convey to Roberts the land used in con-
nection with the business, as well as all their "right, title,
and interest in the foundry property, together with all appur-
tenances, fixtures, buildings, and the business heretofore
conducted on said land under the name of William Pender
& Son."   The deed further recited that "this conveyance
is made subject to a mortgage on said premises for $2,500
dated October 14, 1901, recorded November 27, 1901.   .   .
.  five years after date, which said mortgage and debt secur-
ed thereby the grantee herein assumes and agrees to pay."
This deed was acknowledged September 17, 1902, and duly
recorded.   A bill of sale was also drawn up on September
17, 1902, and all the Penders, including James, joined in
its execution.   The bill of sale, after reciting that the Pen-
ders (heirs of William Pender), naming them, "have grant-
ed, bargained, sold, and conveyed" to Fred. Roberts all
their right, title, and interest in and to "all the business
heretofore conducted under the name of William Pender &
Son," naming and giving a description of the property, con-
cludes as follows:   "And the said Fred. Roberts is hereby
authorized to collect all bills due *the firm of William Pender
& Son,* and as part of the consideration for this bill of sale
the said Fred. Roberts is to assume and pay all outstanding
bills, accounts against William Pender & Son, and to save
harmless the parties of the first part from any liability
thereon."   (Italics ours.)   As stated, Roberts paid to the
Penders the $1,000 in money hereinbefore mentioned as part

of the purchase price of the business, and on September 17, 1902, James Pender surrendered to Roberts the possession of the foundry and all other property belonging to the business, which was continued in operation with Mr. Winsness, the defendant, in charge.

On October ——, 1902, Roberts, while absent from the State, died intestate. Upon receiving notice of his death, Mr. Winsness, by direction of Roberts' father, took charge of the business and continued in possession thereof until he was appointed administrator of Roberts' estate, about the middle of November, 1902. As such administrator, he took possession of all the property belonging to the estate of Roberts, including the foundry business. He had an inventory taken about January 4, 1903, and proceeded regularly to administer upon the estate as provided by law. On January 2, 1903, M. J. Bridgman, the plaintiff herein, was appointed administrator of the estate of William Pender, and he immediately thereafter made a demand on Winsness for the property belonging to the foundry business and held by Winsness as administrator of the Roberts estate. Winsness refused to surrender the property, and Bridgman thereupon brought this action in claim and delivery to recover the personal property, alleging title in himself as administrator of the estate of William Pender. A bond was given, and the property taken by the sheriff. The defendant answered, alleging title in himself as administrator of the estate of Fred. Roberts, and in his prayer asked for a return of the property, damages for its detention, and for costs of suit. Before the trial was had, a portion of the property was taken by other parties under a claim which was conceded to be superior to that of either the plaintiff or defendant. The court, after hearing the evidence, rendered judgment in favor of defendant for the return of the balance of the personal property in controversy, and, in case a return could not be had, it was adjudged that respondent have and recover from plaintiff the value of the property, which the court found to be $4,835.89, together with $1,518.-50 as damages for its detention, which the court found to be

equivalent to the interest upon the value of the property at the rate of eight per cent. per annum from January 20, 1903, the date when the sheriff obtained possession of the property under a writ of replevin, together with costs of suit. To reverse the judgment, the plaintiff has prosecuted this appeal.

The first error alleged, and the one upon which appellant principally relies for a reversal of the judgment, is that the second finding of the court is not sustained by the evidence. This finding, so far as material here, is as follows: "That at the time of his death the said decedent, William Pender, was a member of a certain firm or copartnership doing business at Salt Lake City under the firm name and style of William Pender & Son, the members of said copartnership being the decedent, William Pender, and one James Pender, a son of decedent; that the business so carried on by them was that of foundrymen."

We think the finding is amply supported by the evidence, which is briefly summarized in the foregoing statement of the case. The rule is well settled that the existence of a partnership may be implied from circumstances, and especially so where, as in this case, the facts and circumstances proved at the trial not only tended to show the existence of an actual partnership, but were inconsistent with any other theory.

In the case of *Haug v. Haug,* 193 Ill. 645, 61 N. E. 1053, a question similar to the one here under consideration was involved, namely, the class of testimony that may be introduced to prove a partnership, where that fact is in issue, and the court, in the course of the opinion, says:

"There is no evidence in the record of any express contract of partnership or written agreement of partnership between the parties. It is well settled, however, that written articles of agreement are not necessary to constitute a partnership, but that a partnership may exist under a verbal agreement. Bopp v. Fox, 63 Ill. 540. The existence of a partnership may be implied from circumstances. *Kelleher v. Tisdale,* 23 Ill. 405. A partnership may arise out of an arrangement for a joint business, wherein the word 'partnership' may not have been used. 'If there is such a joinder of interest and action as the law will consider as equivalent, and regards as in effect constituting. a partnership, it will give to the

persons so engaged all the rights, and lay upon them all the responsibilities, and to third persons all the remedies, which belong to a partnership.' *Morse v. Richmond*, 6 Ill. App. 166. It is also well settled that when, by agreement, persons have a joint interest of the same nature in a particular adventure, they are partners *inter se*, although some contribute money and others labor. Such a partnership may well exist, although the whole capital is in the first instance advanced by one party, and the other contributes only his skill and ability in the selection and purchase of the commodities. *Robbins v. Laswell*, 27 Ill. 365. The most significant circumstance, bearing upon the question whether or not there was a partnership between the appellant and his deceased son, is the fact that they did business together under the firm name of 'A. Haug & Son.' The proof shows conclusively that the son here referred to was the deceased son, Martin, and that the two members of the firm of A. Haug & Son were the appellant and his son Martin. The fact that parties do business together under a firm name is a circumstance which, although not conclusive by itself, may be considered by a court or jury, in connection with other circumstances, in determining the question whether or not a partnership exists between the parties."

In 22 A. & E. Ency. Law, 28, the rule is tersely, and we think correctly, stated as follows:

"The existence of a partnership is to be proved, like any other fact, by competent evidence and subject to the usual rules of evidence." And again, on pages 39, 40, it is said: "The law does not require, in any case, that a partnership shall be evidenced in writing or be proved by an express parol agreement to that effect, but it may be inferred from the acts and conduct of the parties. Circumstantial is sufficient."

Objections were made and exceptions taken by appellant to the admission in evidence of certain paragraphs of the city directory hereinbefore referred to, wherein William and James Pender are mentioned and designated as the proprietors of the business in question which was carried on at the time under the name of William Pender & Son. There is evidence in the record that tends to show that William Pender had notice of the advertisement. In fact, we think the only reasonable inference that can be drawn from the evidence bearing on this point is that he was a party to the transaction whereby the advertisement was inserted in the

directory. Objections were also made to the admission in evidence of the written statement furnished R. G. Dun & Co., wherein William and James Pender are referred to as "partners or officers" of the firm of William Pender & Son. The evidence without conflict tends to show that this statement was signed by William Pender himself. The paragraphs in the city directory and the written statement furnished R. G. Dun & Co. were therefore properly admitted in evidence. 9 Ency. Ev., 548.

The next assignment of error relates to certain testimony elicited from James Pender on cross-examination, wherein he admittted that, long after his father's death, while engaged in a controversy with Winsness, respondent herein, over the right of possession of the property in question, he pointed to the sign "William Pender & Son" on the office window, and made the following statement: "There! Do you see that? I am 'Pender & Son.'" In his direct examination he testified that he and his father dissolved partnership December 3, 1894, and that he never again acquired an interest in the business, and that the relation of copartner ship never thereafter existed between him and William Pender. The testimony objected to was therefore admissible, as it tended to impeach and weaken the force of the sweeping statements which the record shows were made by the witness to the effect that he and his father were not partners at the time of the latter's death.

We find no reversible error in the record.

The judgment is therefore affirmed, with costs.

STRAUP, J. (concurring).

The plaintiff contended that William Pender, his intestate, was, at the time of his death, the sole owner of the property in question. While it is admitted that all of his heirs, after his death, sold and transferred it for value to Fred. Roberts, and that all of them joined in the bill of sale transferring it to him, the plaintiff nevertheless urges that the heirs had not the lawful right to the possession of the property, and could not confer good title, and therefore the plaintiff, as

the administrator of William Pender's estate, had the right to reclaim it.    On the other hand, the defendant contended that the property was partnership property belonging to William Pender and his son James Pender, and that, after the death of the former, James, as surviving partner, for value sold and transferred it to Roberts.    The defendant further contended that, though William and James Pender were not partners, and though the property was owned by the former at his death, his heirs nevertheless had the lawful right to sell and transfer whatever right, title, and interest they had in and to the property, and could give Roberts good title subject only to claims of creditors and expenses of administration.    Upon the evidence adduced, the court found that, at the time of and prior to William's death, he and James were and had been partners in business, the property partnership property, and that James, as the surviving partner, in settlement of the partnership business, for value, sold and transferred it to Roberts.    It is not disputed that by virtue of the statute (section 3918, Comp. Laws 1907) James Pender had the right in such case to sell the property in such manner.    Upon such findings a judgment resulted in favor of the defendant, who was the administrator of Roberts' estate, and who had taken possession of the property on Roberts' death.    It is claimed on appeal that the findings in these particulars are not supported by the evidence.    I think there is much evidence in the record to support them.    In view of such findings, it is not essential to consider whether the heirs of William Pender, on the theory that the property belonged solely to him, could transfer it to Roberts and give him good title as against the demand of William Pender's administrator, in the absence of a showing that an administration of the property was necessary to pay claims or expenses of administration.

James Pender was a witness for the plaintiff.    On direct examination, he testified, in substance, that he and William Pender were not partners at the time of William's death, and that the property belonged to William.    On cross-examination, he was asked if he had not stated to di-

verse persons that he (James) was Pender & Son, and that he was a partner of the firm Pender & Son. It is contended that these questions were improper because it is not competent to show the existence of a partnership by declarations of one of the partners, and that they were not proper impeaching questions because a sufficient foundation with respect to time and place was not laid. The principle of law invoked, that a declaration of one partner is not competent to show the existence of a partnership, is not applicable to the point involved. After the witness had stated that William Pender was the sole owner of the property, as tending to dispute or modify such statement, it was proper, as matter of cross-examination, to ask him if he had not at other times asserted that he himself was the owner or part owner of the property. The circumstance of the making of the statements was sufficiently called to his attention to enable him to understand the transaction referred to and the persons to whom it was claimed he had made the statements. At any rate, whether a foundation was sufficiently laid in respect of time and place was a question which would more properly arise upon the offer of the impeaching testimony.

The defendant, over plaintiff's objection, was permitted to put in evidence a statement furnished a mercantile agency showing that the firm of William Pender & Son consisted of William and James Pender. The statement, as furnished, bears the signature of William Pender. It was received in evidence in the nature of an admission on his part. The clerk of the mercantile agency testified that he obtained the statement in the regular course of business from William Pender & Son. He did not identify the particular person who subscribed the statement, nor testify that the signature was in the handwriting of William Pender. However, other witnesses, by comparing the signature with writings of William Pender not in dispute, testified that they were written by the same person. The appellant concedes that the statement was properly admitted, had its authorship or adoption by William Pender been sufficiently

shown. The testimony referred to, I think, sufficiently shows his authorship. Furthermore, I think, from all the circumstances shown in the case, the inference is justified that he had knowledge of and assented to the statement contained in the report.

In respect to the advertisement in the directory, by which it also appears that the firm of William Pender & Son consisted of William and James Pender, the authorship of William Pender is not so clearly shown. Nevertheless, sufficient was made to appear from which the inference could be drawn that he had knowledge of its contents and acquiesced in its publication.

Though it should be held that these reports were improperly admitted, still the contention of appellant cannot prevail, because there is other sufficient evidence in the record to support the finding of partnership.

ARMSTRONG, J., concurs.