[No. 31372.   Department One.   September 12, 1950.]

HAROLD MINDER, *Respondent and Cross-appellant,* v.
JOHN GURLEY *et al., Appellants.*[1]

[1]Reported in 222 P. (2d) 185.

*Merrill Wallace, Ray R. Greenwood,* and *Frank A. Shiers,* for appellants.

*Forrest & Rowles,* for respondent and cross-appellant.

DONWORTH, J.—Plaintiff brought this action as the assignee of a number of creditors, of which he is one. In his complaint he set out eighteen causes of action, a number of them being similar in their allegations in that plaintiff attempted to recover on four different theories of law as follows: (1) That a partnership existed between defendants John Gurley, Robert T. Crawford, Kenneth R. Crawford, Marshall O. Smith and Donald Gillis and that they became indebted for merchandise furnished the partnership; (2) that the above named defendants represented themselves as

partners and thereby are estopped to deny the existence of a partnership as to those who extended credit in reliance thereon; (3) that a partnership existed and each of the defendants impliedly or expressly agreed to personally assume the debts contracted before the effective date of the partnership; and (4) that in forming the partnership the bulk sales act of the state of Washington was violated and that the transfer of property was therefore a fraud as to pre-existing creditors and the defendants are individually liable since the partnership assets had been disposed of by the partnership.

Defendants Smith and Gillis were dismissed from the case at the commencement of the trial.

Defendants Robert and Kenneth Crawford answered denying all of plaintiff's allegations and, as an affirmative defense, alleged that their relationship to John Gurley was that of creditor and debtor. The affirmative defense being denied by the reply, the action was tried to the court sitting without a jury. At the close of all of the evidence, the trial court took the case under advisement and wrote a memorandum decision in which it reviewed the testimony and held that a partnership had been·proven and that the bulk sales act had been violated. Thereafter, the court entered judgment in favor of plaintiff as against defendants Robert and Kenneth Crawford and the marital community composed of Robert Crawford and his wife.

This judgment was based upon findings of fact and conclusions of law to the effect that a partnership had been formed between defendants Robert Crawford, Kenneth Crawford and John Gurley thereby making them liable to the extent of $1,203.85 for debts contracted after the formation of the partnership. The trial court also found that the bulk sales act had been violated in the formation of the partnership and that defendants Robert and Kenneth Crawford, and the marital community composed of Robert Crawford and his wife, were liable to plaintiff in the further sum of $4,329.62. It is from this judgment that the above-named defendants have appealed.

The action was dismissed as to defendant John Gurley for the reason that the trial court concluded that the evidence showed that, prior to the commencement of the instant action, his individual liability for these obligations had been terminated through a discharge in bankruptcy. Respondent has taken a cross-appeal from that portion of the judgment.

The evidence adduced at the trial was somewhat involved and quite contradictory in respect to many material issues. Therefore, we feel that it is only necessary to summarize those facts upon which the trial court could have properly based its finding that a partnership existed between John Gurley and appellants Robert and Kenneth Crawford.

Hereafter, in this opinion, appellant Kenneth Crawford will be referred to as Kenneth, Robert Crawford as Robert, and the two together as appellants.

It is not claimed that there was any written partnership agreement between John Gurley and appellants. Consequently, respondent was compelled to resort to circumstantial evidence in his attempt to establish the existence of the partnership.

Prior to December, 1946, John Gurley operated two restaurants in Bremerton, Washington, known respectively as "Gurley's Sea Food" and "Rau's Chicken Dinner Inn." At this time he had experienced several financial reversals and was indebted to a great number of persons. In seeking to alleviate this condition, he told Kenneth of his plight and asked him if he would come in as a partner in the restaurants, or help in any other way that he could.

In response to this plea, Kenneth did furnish some financial assistance. For a short time, this aid consisted of providing Gurley with small amounts of money and signing some of Gurley's notes as an accommodation endorser. By January, 1947, he had placed eleven thousand dollars at the disposal of Gurley. In May, 1947, he turned over an additional fifteen hundred dollars to Gurley's credit, making a total contribution of twelve thousand five hundred dollars, for which he obtained Gurley's unsecured promissory note.

The evidence shows that at this time Kenneth did not know Gurley particularly well, but rather that their acquaintance had been somewhat casual over a period of years. Nevertheless, Kenneth borrowed ten thousand dollars from the National Bank of Washington, Bremerton branch, for the purpose of assisting Gurley in his financial difficulties.

Kenneth testified that he didn't expect to get anything out of the transaction other than receiving his money back with interest, or twelve thousand five hundred dollars worth of stock when the restaurants were incorporated, whichever he chose to take. Kenneth further testified that his reason for involving himself financially with Gurley was their friendship and his desire to protect his own interest in another venture which depended for its success upon Gurley's staying in business. Kenneth and Robert had advanced money to a liquor club, which had taken a sublease from Gurley, and Kenneth felt that if he didn't keep Gurley in business he would lose his loan to this liquor club.

At approximately the same time, Gurley approached Robert, told him the same story that he had told Kenneth, and asked him to put some money into the business. At that time, Robert didn't give Gurley a definite answer but later borrowed twelve thousand five hundred dollars from his bank and had this sum credited to Gurley's account. According to Robert, he only expected to get his money back on Gurley's unsecured note.

Gurley testified that he didn't know Robert particularly well at the time the money was put at his disposal. Robert stated that he had never even met Gurley at this time but had "loaned" the money at the instance of Kenneth and his banker. Gurley never actually saw the money that the appellants placed to his credit at the bank because it was applied immediately to the payment of his bills and taxes. John Gurley was the only one of the three alleged partners who was ever authorized to draw checks on the restaurant account.

It was Gurley's impression from the conversations had with appellants at the time they put in the money that a partnership was to be formed, but several months later he was informed by appellants that the money had only been loaned to him.

It is clear that the oral arrangements regarding the sharing of profits were extremely vague. Gurley testified:

"There wasn't no specifications as to what each one would receive because we just put the money in and stated, later, —if there was any partnership papers to be made out, then we would settle that later. That is the way it went."

At the time the money was put in by appellants, certain changes were made with respect to the restaurant books. A new cash book and bank deposit book were started for the restaurants, and an inventory taken as of that day. The word "partnership" had been written on the check register by Gurley's bookkeeper, but he testified that he had never been instructed to write in that word. Also at this time, Gurley went on a salary of forty-five dollars per week, but Gurley stated that this was the salary which he had always drawn.

Prior to February, 1947, Kenneth ordered a quantity of letterheads for the restaurants, with the names of appellants and John Gurley printed at the top, and also ordered individual business cards for each of them, with the names of the two restaurants on each. The copy for the letterhead was furnished to the printer by Kenneth.

One of the creditors testified that Kenneth had stated to him that he was a partner, and another creditor stated that Robert had informed him that he was backing Gurley financially.

On May 1, 1947, Gurley was indebted to the National Bank of Washington, Bremerton branch, to the extent of $18,692.92, which amount was evidenced by a series of notes secured by a chattel mortgage on the personal property of the two restaurants. This note was, at that date, in default and the bank was threatening foreclosure proceedings if Gurley couldn't get any one with financial stability

to sign a new note. Prior to this date (April 23, 1947), appellants, John Gurley, and their respective wives had all signed a chattel mortgage covering the personal property of the restaurants, which recited that this mortgage secured a debt owed to the National Bank of Washington in the sum of eighteen thousand dollars. At this time (May 1, 1947) John Gurley and his wife executed two bills of sale, each for a one-third interest in the restaurant personal property, naming each appellant and his wife as grantees. These bills of sale were prepared by the National Bank of Washington and, according to the bank manager, were obtained for the purpose of protecting appellants in signing the renewal note for eighteen thousand dollars. On May 2, 1947, appellants, John Gurley, and their respective wives all signed the renewal note.

The bank foreclosed on this note during 1948 and Robert paid the amount of the deficiency after having defaulted in the action.

It is undisputed that the parties involved made no attempt to comply with the bulk sales act in connection with the transfer of a one-third interest in the restaurant personal property by Gurley to each appellant.

Appellants contend that the trial court erred in finding that a partnership was formed between John Gurley and appellants.

We have stated that the fundamental test for determining the existence of a partnership is whether it was the intention of the parties to form a partnership as manifested in their express agreements, statements and conduct. *Stipcich v. Marinovich*, 13 Wn. (2d) 155, 124 P. (2d) 215.

In *Nicholson v. Kilbury*, 83 Wash. 196, 145 Pac. 189, this court stated:

"There is no arbitrary rule by which it may be determined whether a partnership relation existed in a given instance or not. The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties. While a contract of partnership, either expressed or implied, is essential to the creation of the

partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory. *Bridgman v. Winsness,* 34 Utah 383, 98 Pac. 186. It is well settled that no one fact or circumstance will be taken as the conclusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established."

The evidence in the instant case is obscure and conflicting regarding precisely what type of business relationship had been entered into between the appellants and John Gurley. While some factors point toward a relationship of debtor-creditor, even stronger factors point toward the existence of a partnership. The following facts support the conclusion of the trial court on this issue: (1) Acts of appellants in "loaning" large sums of money, without any security, to a casual acquaintance when it was necessary to obtain those sums by borrowing from a bank; (2) ordering business cards and letterheads with appellants' names on them; (3) obtaining bills of sale from Gurley conveying an undivided one-third interest in the restaurant personal property to each of the appellants; and (4) testimony of John Gurley that it was his impression that a partnership existed.

■ It is true that the evidence did not make it clear as to what the profit-sharing arrangement was, but we have held that these details do not have to be shown except in an accounting matter. *Potter v. Scheffsky,* 139 Wash. 238, 246 Pac. 576.

■ Furthermore, as to third persons, less proof is required to show a partnership than as between the parties themselves. *Cruickshank v. Lich,* 158 Wash. 523, 291 Pac. 485.

■ Viewing the evidence as a whole, we cannot conclude that the evidence preponderates against the finding of the trial court that a partnership existed in December, 1946, and thereafter. We, therefore, accept this finding and hold that appellants' first assignment of error is without merit.

· Appellants next contend that the trial court erred in concluding that the transaction between John Gurley and the appellants was a sale within the bulk sales law.

Courts of last resort in this country appear to have never been in complete harmony as to whether the bulk sales law must be complied with when an individual transfers his stock and fixtures to a partnership, of which he is a member, and which has been organized to take over the business. See 24 Am. Jur., Fraudulent Conveyances, 360, § 255; 37 C. J. S., Fraudulent Conveyances, 1345, § 481 (e); 51 A. L. R. 403, and 96 A. L. R. 1213.

Our bulk sales law, Rem. Rev. Stat. (Sup.) (as amended in 1943), §§ 5832-5835 [P.P.C. §§ 352-1 to 352-7], provides in part as follows:

"It shall be the duty of every person who shall bargain for or purchase all or substantially all of any stock of goods, wares or merchandise, or any restaurant, cafe, . . . and/or all or substantially all of the fixtures and equipment used in and about the business carried on by the vendor, in bulk, for cash or on credit, before paying the vendor, or his agent or representative, or delivering to the vendor, or his agent, any of the purchase price thereof, or any promissory note or other evidence of indebtedness therefor, to demand of and receive from such vendor, or his agent, . . . a statement in writing, sworn to substantially as hereinafter provided, giving the names and addresses of all of the creditors of the vendor, to whom the vendor may be indebted, for or on account of any services, commodities, goods, wares or merchandise, and/or fixtures and equipment, used in or about or furnished to the business of the vendor, or for or on account of money borrowed to carry on the business of the vendor, or for or on account of labor employed in the course of the business of the vendor, of which the goods, wares and merchandise, and/or fixtures and equipment, bargained for or purchased, are a part, together with the amount of indebtedness due and owing and to become due and owing, by the vendor, to each of said creditors; and it

shall be the duty of said vendor, or agent, to furnish such statement together with a statement of the consideration to be paid which shall be verified under oath, to the following effect: . . ." Rem. Supp. 1943, § 5832.

"Whenever any person shall bargain for, or purchase, all or substantially all of any stock of goods, wares or merchandise, or any restaurant, cafe, . . . and/or all or substantially all of the fixtures and equipment used in and about the business of the vendor, in bulk, for cash or credit, and shall pay any part of the purchase price, or execute, or deliver to the vendor thereof, or to his order, or to any person for his use, any promissory note or other evidence of indebtedness for said purchase price, or any part thereof, without first having demanded and received from said vendor or from his agent, the statements provided for in section 5832, verified as therein provided, and without applying or causing to be applied such purchase price pro rata to the payment of the bona fide claims of the creditors of the vendor as shown upon such verified statements, and without filing the verified statements. . . . such sale, or transfer, shall be fraudulent and void as to creditors of the vendor, . . ." Rem. Rev. Stat. (Sup.), § 5833.

"Any sale, exchange or transfer, or attempted sale, exchange or transfer, of all or substantially all of any stock of goods, wares or merchandise, and/or all or substantially all of the fixtures and equipment used in and about the business of a vendor engaged in the business of buying and selling and dealing in goods, wares or merchandise, of any kind or description, or in the business of operating a restaurant, cafe, beer parlor, . . . made out of the usual and ordinary course of business of the vendor, or the sale, exchange or transfer, or attempted sale, exchange or transfer of substantially the entire business of buying, selling and dealing in goods, wares or merchandise, or of operating a restaurant, cafe, beer parlor, . . . conducted by the vendor, or the sale, exchange or transfer, or attempted sale, exchange or transfer, of the interest of the vendor in any such business, shall be deemed a sale and transfer in bulk, in contemplation of this act: . . ." Rem. Rev. Stat. (Sup.), § 5835.

*Spokane Merchants' Ass'n v. Koska,* 118 Wash. 445, 203 Pac. 969, is very similar to the case at bar. In the cited case, a sale of a one-half interest in a business was made to a vendee for the purpose of forming a partnership. This court

held that the sale was within the then existing bulk sales law (Rem. Code, §§ 5296-5300) which, for the purposes of this opinion, is not materially different in its provisions from the present bulk sales law quoted above.

█ In view of the cited case and our statute (Rem. Rev. Stat. (Sup.), § 5835), which provides that an

" . . . attempted sale, exchange or transfer, of the interest of the vendor in any such business, shall be deemed a sale and transfer in bulk, in contemplation of this act: . . ."

we are of the opinion that the sale in the present case, being a transfer of two thirds of Gurley's restaurant personal property to his partners, constituted a transfer within the meaning of the bulk sales law.

Appellants have also argued that, assuming the sale was in violation of the bulk sales law, the sole recourse of respondent is against the property fraudulently conveyed. We are not in accord with this view.

The record indicates that the entire restaurant personal property passed to the trustee in the Gurley bankruptcy proceeding and had been disposed of and the proceeds distributed among the creditors of the marital community composed of John Gurley and Regina Gurley, his wife, in accordance with the provisions of the bankruptcy act.

█ Our cases make it clear that when (as in this case) the creditors cannot pursue the goods sold in violation of the bulk sales law, the creditors have a remedy against the purchaser for the value of the goods. *Kohn v. Fishbach,* 36 Wash. 69, 78 Pac. 199, 104 Am. St. 941, and *Friedman v. Branner,* 72 Wash. 338, 130 Pac. 360.

We have considerable doubt as to whether any action could be maintained against the purchaser (appellants) in the instant case. We infer from the evidence that the creditors of the marital community, whose claims were in existence prior to December, 1946, obtained at least partial satisfaction thereof from the proceeds of the restaurant personal property in the bankruptcy proceeding. Bankruptcy Act, § 70, sub. e(1), 11 U. S. C. A., § 110, sub. e(1); 4 Collier on Bankruptcy (14th ed.), § 70.74.

■ However, assuming, without deciding, that this action could be maintained against the appellants for the value of this property, we find that the evidence in this case was not sufficient to enable the court to determine its value. The trial court did not make a finding with respect to the value of the property transferred in violation of the bulk sales law.

The only evidence as to the value of the two-thirds interest in the restaurant personal property consists of a statement made by the manager of the bank, which held an eighteen thousand dollar chattel mortgage on the restaurant personal property. The bank manager testified that the property was worth eighteen thousand dollars as a going concern. This would mean that Gurley had no equity in the property. The fact that the appellants put in a total of twenty-five thousand dollars which was deposited to Gurley's credit in the bank under circumstances disclosed by this record is no indication of the value of the property. The appellants were interested in keeping Gurley in business for several reasons and there was no showing that they paid that sum of money solely for the two-thirds interest in the property. On the contrary, the evidence indicates that the bill of sale was delivered to appellants at the instance of the bank manager in an effort to give them some security and that it was not the intention of appellants to pay twenty-five thousand dollars for two-thirds interest in the restaurant.

Respondent has cited *Kohn v. Fishbach, supra,* to support his contention that the trial court need not make a finding as to the value of the business. In the cited case, this court found that the purchase price paid by the vendee was sufficient evidence to prove the value of the transferred property though no finding as to the value was made by the trial court. There are doubtless some circumstances where the price paid by the vendee may be considered as evidence of the value of the property, but we think that the evidence in the case at bar is clearly insufficient to support that portion of the judgment awarding respondent $4,329.62.

For the reason that the respondent has failed to sustain the burden of proof that the transferred property had any value at all over and above the existing chattel mortgage, he may not recover this sum from appellants in this action.

Appellants' final assignment of error is that the trial court erred in granting judgment for the respondent with respect to certain claims of one of the creditors which the respondent failed to prove were assigned to him.

At the trial, respondent introduced an assignment which transferred to the respondent the claim of the Thrift Super Market No. 1 against John Gurley and appellants amounting to $378.52. The assignor testified that, prior to the time of the sale to appellants by John Gurley, the latter owed him two separate amounts, namely, $378.52 for one restaurant and $400 for the other. He further testified that, after the time of the sale, the Thrift Super Market No. 1 was given a check for $99.69 which was returned because there were not funds sufficient in the bank to cover it.

With respect to the $400 item, this was included in the portion of the judgment granted respondent in the sum of $4,329.62 which is discussed earlier in this opinion.

The appellants, by their answers, failed to specifically deny the allegations of paragraph III of the first cause of action (which were realleged in paragraph I of the second cause of action) which asserted that the account had been duly and regularly assigned in writing to the respondent. Furthermore, respondent introduced in evidence without objection the check to the Super Market for $99.69. Appellants assign as error the inclusion of the last mentioned sum in the judgment granted respondent.

Having failed to deny this allegation, appellants may not now be heard to complain of the inclusion of the sum of $99.69 in the third paragraph of the judgment in favor of respondent.

Respondent, by his cross-appeal, has contended that the trial court erred in holding that John Gurley's individual

liability for these obligations had been terminated through a discharge in bankruptcy.

The discharge in bankruptcy introduced by John Gurley recited:

"It is ordered that the said John Gurley and Regina Gurley, husband and wife, as a marital community be and they hereby are discharged. . . ."

Respondent argues that such a discharge operated only as to the marital community and left the individual liability of John Gurley intact. Such an argument would imply that a marital community can be discharged alone without affecting the separate liability of the husband for the community debts.

Respondent has not cited any decision upon this point and our own research has revealed none. Honorable Ben L. Moore, formerly Referee in Bankruptcy, writing in the Washington Law Review in 1936 (Vol. XI, p. 78), stated that this was then an open question.

We are of the opinion that the discharge by the bankruptcy court in this case served to discharge the marital community with respect to community debts and, in the absence of any provision in the order of discharge indicating a contrary intent, also discharged John Gurley's separate liability for these provable debts which he incurred in behalf of himself and the marital community.

Respondent cites *Conley v. Moe*, 7 Wn. (2d) 355, 110 P. (2d) 172, 133 A. L. R. 1089, in support of his position. The facts of that case indicate that a marital community alone went through bankruptcy without affecting the separate property and liability of the husband. The judgment creditor had secured a judgment against the marital community *only* as the result of an action for wrongful death brought against the marital community composed of John Moe and Borghild J. Moe and against Mrs. Moe's son by a former marriage. No judgment was recovered against John Moe individually and he was not found to be separately liable for the tortious acts of his stepson. The trustee in bankruptcy, therefore, could not administer upon John Moe's

separate property. The cited case is not in point here because Gurley was individually liable for the restaurant obligations as well as the marital community composed of his wife and himself.

Respondent urges this court to again consider his motion to dismiss appellants' appeal which we denied when it was previously argued. We decline to reconsider this motion.

The remaining assignments of error have been considered and need not be separately discussed.

That portion of the judgment against Kenneth R. Crawford, Robert T. Crawford and the marital community composed of Robert T. Crawford and his wife in the sum of $4,329.62 is hereby reversed. That portion of the judgment against the above named parties for debts incurred by the partnership subsequent to December, 1946, amounting to $1,203.85, is hereby affirmed.

Appellants will recover their costs in this court.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.

[1] Reported in 222 P. (2d) 181.