[No. 34150.   Department One.   January 2, 1958.]

E. L. HULL, *Respondent*, v. VICTOR MINKLER *et al.*,
*Appellants.*[1]

[1]Reported in 319 P. (2d) 815.

*Fred M. Bond*, for appellants.

*Frank J. Ruff* and *Russell Stark*, for respondent.

FINLEY, J.—This is a garnishment action against the Minkler-Rodgers Motor Company, a partnership; the partners thereof, Victor Minkler and Fred Rodgers, individually and the marital community of each partner; and Glen Minkler, individually, and his marital community. The action is based on the primary liability of Glen Minkler.

On March 3, 1952, Victor Minkler and his wife entered into a conditional sale contract with Boyd C. Mabry for the transfer and sale of the personal property of the Minkler Motor Company, situate in Raymond, Washington, together with the good will and business of the company, for an agreed price of $46,600, allocated as follows:

| | |
|---|---:|
| Inventory of parts | $ 27,000 |
| Shop equipment | 16,000 |
| Parts equipment | 1,500 |
| Furniture and Fixtures | 2,100 |

The contract provided for a down payment, with balance to be paid in monthly installments of three hundred dollars.

This conditional sale contract was never filed for record as required by RCW 63.12.010. Apparently, no affidavit of creditors (in compliance with the bulk sales law, RCW 63-.08) was sought or demanded, and, consequently, none was filed.

Boyd C. Mabry took possession of the personal property and the premises formerly occupied by the Minkler Motor Company at Raymond and remained in possession until about June 22, 1953. In the meantime, Mabry incorporated his business under the trade name of *Mabry Motors, Inc.* At that time, the personal property which he was purchasing

under the conditional sale contract was apparently listed as an asset as if owned by the corporation.

On June 22, 1953, Mabry Motors, Inc., entered into a conditional sale contract with Glen Minkler, the son of Victor Minkler. This contract conveyed the seller's interest in the personal property then on the premises occupied by Mabry Motors, Inc. The contract price was $10,000, $5,000 to be paid at the signing of the instrument, the balance to be paid at the rate of $100 per month, with interest. The contract also provided that Glen Minkler assumed and agreed to pay all of the seller's liabilities and obligations for which seller was responsible under the terms and in strict accordance with the provisions of the prior contract between Victor Minkler and his wife and Boyd C. Mabry, dated March 3, 1952.

The conditional sale contract of June 22, 1953, to Glen Minkler was never filed for record pursuant to RCW 63-.12.010. No affidavit of creditors pursuant to the bulk sales law was apparently sought or demanded; consequently, one was never filed.

Thereafter, Glen Minkler took possession of the above-described chattels and premises and did business under the firm name of Minkler Motor Company. His business operations continued on the same premises from June, 1953, until some time during the fall or winter of 1955. During this time, he was in possession of the personal property referred to and described in the 1952 and 1953 conditional sale contracts.

In September, 1955, Glen Minkler commenced to borrow from Mr. E. L. Hull, the plaintiff, substantial sums of money for use in the business. Subsequent to the time he received the first loan from Hull, Glen Minkler transferred to his father, Victor Minkler, all of the assets and chattels of the business—without apparent consideration. Victor Minkler and Fred Rodgers thereafter established a partnership, known as the Minkler-Rodgers Motor Company, and took possession of the chattels on the same premises.

E. L. Hull obtained a judgment against Glen Minkler and his marital community in the amount of $11,795.36. He then commenced this garnishment action, based on the judgment.

█ In order to succeed in this garnishment action predicated on the bulk sales law, plaintiff Hull had to establish:

(1) That there was a debt owing to him from Glen Minkler. *Mill & Logging Supply Co. v. West Tenino Lbr. Co.* (1954), 44 Wn. (2d) 102, 265 P. (2d) 807; *Rothchild Bros. v. Trewella* (1935), 36 Wash. 679, 79 Pac. 480;

(2) That he is a creditor within the meaning of the bulk sales law. *Electrical Products Consolidated v. Smyser* (1943), 19 Wn. (2d) 509, 143 P. (2d) 452; *Hardwick v. Gettier* (1906), 43 Wash. 644, 86 Pac. 943;

(3) That the transfer to the garnishee defendants was a bulk sale within the purview of the bulk sales law. *Mill & Logging Supply Co. v. West Tenino Lbr. Co., supra*; *Minder v. Gurley* (1950), 37 Wn. (2d) 123, 222 P. (2d) 185;

(4) That the requirements of the bulk sales law with regard to an affidavit of creditors were not fulfilled. *Spokane Merchants' Ass'n v. Koska* (1922), 118 Wash. 445, 203 Pac. 969; *Friedman v. Branner* (1913), 72 Wash. 338, 130 Pac. 360;

(5) That the value of the assets transferred exceeds the amount of his claim; or, in the event he is unable to show that the value of the assets exceeds his claim, then he must prove the value of the assets transferred. *Minder v. Gurley, supra*; *Kohn v. Fishbach* (1904), 36 Wash. 69, 78 Pac. 199.

The trial court found that plaintiff established the foregoing elements. A decree was entered ordering that the judgment be satisfied from the assets and chattels obtained from Glen Minkler and presently in the possession of the Minkler-Rodgers Motor Company; or, if the motor company no longer possessed the chattels and assets referred to, that the judgment should be satisfied by the garnishee defendants. Appeal is brought by the Minkler-Rodgers Motor Company, Victor Minkler and his marital community, and Fred Rodgers and his marital community.

Appellants have assigned error to most of the findings of fact and conclusions of law made by the trial court. We will, therefore, discuss briefly each of the elements necessary to sustain the trial court's action.

Respondent established the first element in this action—that there was a debt owing to him from Glen Minkler at the time he obtained judgment against Glen Minkler.

Appellants contend that the second element was not established. They assert that respondent is not a creditor within the meaning of the bulk sales law. It is not disputed that Glen Minkler borrowed the money "to carry on the business . . . " (RCW 63.08.020). The trial court found that the debt was incurred by Glen Minkler subsequent to the time he acquired the business and prior to the time he disposed of it, and the evidence does not preponderate against such finding of fact. The requirements of the statute, therefore, have been met by the respondent.

As to the third element, appellants vigorously contend that the transfer to them was not within the purview of the bulk sales law for two reasons: (1) Because Glen Minkler never owned the property and had no property to sell; and (2) because there was no sale.

Appellants claim that Glen Minkler never owned the property, because, by the terms of his contract with the Victor Minklers, Mabry was prohibited from transferring the property. Appellants assert that the conditional sale contract between the Victor Minklers and Mabry expressly prohibited *any* sale or assignment by Mabry. As the contract was worded, however, it prohibits only the removal of the business from the premises, and it is undisputed that the business remained on the same premises throughout all of the transfers.

Appellants further assert that Glen Minkler never owned the property, because the sales were conditional. Neither the Victor Minkler-Mabry conditional sale contract nor the Mabry Motors, Inc.,-Glen Minkler conditional sale contract was recorded pursuant to RCW 63.12.010. By the

terms of that statute, unrecorded conditional sales become absolute as to bona fide creditors. *Dahl v. Stromberg* (1948), 31 Wn. (2d) 884, 200 P. (2d) 495; *Cook v. Washington-Oregon Corp.* (1915), 84 Wash. 68, 146 Pac. 156, 149 Pac. 325. Therefore, as to respondent, the sale to Glen Minkler was absolute, and Glen Minkler was the owner of the property.

At this point, it is necessary to recall that the trial judge found that there were two transfers of the personal property in question after Glen Minkler incurred the debt to respondent. The first transfer went from Glen Minkler to Victor Minkler, and the trial court found it to be without apparent consideration. The second transfer went from Victor Minkler to the Rodgers-Victor Minkler partnership. It is clear from *Minder v. Gurley, supra,* that the second transfer is within the purview of the bulk sales law.

The first of the two transfers presents a rather unique situation. Since the trial court found the transfer to be without apparent consideration, the meaning of the word, "transfer," as used in the bulk sales law, is squarely raised.

The statute defines "bulk sale" as "Any sale, exchange, or transfer, or attempted sale, exchange, or transfer . . ." RCW 63.08.010. The word "sale," denotes a passing of property from one to another for a price or consideration. *North Idaho Grain Company v. Callison* (1915), 83 Wash. 212, 145 Pac. 232. The word, "exchange," denotes a passing of property for other property. The word "transfer," denotes any act by which property of one is vested in another, whether by sale, gift, or otherwise. *Gazzam v. Young* (1921), 114 Wash. 66, 194 Pac. 310.

Had the legislature intended to encompass only transfers for value, the words, "sale" and "exchange," would have been sufficient. Further evidence that the legislature intended to encompass more than merely transfers for value is supplied by the fact that it added the words, "attempted sale, exchange, or transfer," in the 1925 act. Laws of 1925, chapter 135, p. 338. We believe that by including the word, "transfer," the legislature intended to reach all bulk trans-

actions whereby the owners of mercantile businesses (and other specified businesses) dispose of their property; this accords with the purpose of the act—to prevent the perpetration of fraud on creditors. *Plass v. Morgan* (1904), 36 Wash. 160, 78 Pac. 784. (The dicta in *Daniels v. Pacific Brewing & Malting Co.* (1915), 86 Wash. 416, 150 Pac. 609, is not persuasive.) We hold that the transfer from Glen Minkler to Victor Minkler was within the purview of the bulk sales law.

As to the fourth element of this garnishment action, it is admitted that no affidavits of creditors pursuant to the bulk sales law were obtained and filed in any of these transfers.

■ As to the fifth element, appellants contend that the value of the assets which were transferred by Glen Minkler to Victor Minkler has not been established. We do not agree. The trial court, in its findings of fact, sets out the value placed on the assets in the contract between Victor Minkler and Mabry; thereafter, the findings refer to the property "heretofore described." The record contains no evidence that the assets are no longer of such value, and, in the absence of evidence to that effect, we cannot say that the evidence preponderates against the findings of the trial court. The findings sufficiently establish that the value of the assets which were transferred by Glen Minkler to Victor Minkler exceeds respondent's claim. *Kohn v. Fishbach, supra.*

■ Appellants assign error to the refusal of the trial court to enter judgment of dismissal in the garnishment action against Victor Minkler and wife, Fred Rodgers and wife, and each of them, and against the Minkler-Rodgers Motor Company.

The transfer from Glen Minkler to Victor Minkler was within the purview of the bulk sales law; no affidavit of creditors was filed pursuant to that law. This establishes the liability of Victor Minkler and his marital community up to the value of the assets received in the transfer from Glen Minkler. *Minder v. Gurley, supra; Kasper v. Spokane*

*Merchants' Ass'n* (1915), 87 Wash. 447, 151 Pac. 800; *Friedman v. Branner, supra;* and *Kohn v. Fishbach, supra.*

■ Failure to comply with the provisions of the bulk sales act does not render the transfer absolutely void; the act makes the transfer fraudulent and voidable only as to creditors of the transferor. As between the transferor and the transferee, title will pass. *Kasper v. Spokane Merchants' Ass'n, supra.* It follows that, in turn, the transferee can also pass good title; and whether an affidavit of creditors pursuant to the bulk sales law is obtained and filed in the subsequent transfer is of no moment in a garnishment action by the creditor of the original transferor.

In *Kasper v. Spokane Merchants' Ass'n, supra,* this court said:

"It will be observed that the act does not purport to vest title in the creditors of the vendor to property so conveyed, nor does it give such creditors a specific lien upon such property; the transfer is simply, as to them, conclusively established by the statute to be fraudulent and void. . . . they may pursue the property in the hands of the wrongdoers or in the hands of those who take it with knowledge of the wrong; or, in the alternative, may pursue the wrongdoers personally as for a conversion of the property.

"But the statute does not confer upon the creditors of a vendor who transfers his goods, wares or merchandise in bulk without a compliance with this statute the right to pursue the property into whosesoever hands it may fall.

. .. .
"
. . .

"The case chiefly relied upon by the respondent to maintain the judgment is *Friedman v. Branner,* 72 Wash. 338, 130 Pac. 360, but that was a proceeding by a creditor of the vendor in the fraudulent transfer against the vendee therein. Clearly, under all rules, he was liable to such creditor. But it does not follow that the vendee's vendee, if a purchaser in good faith and without notice, would be so liable, and this marks the distinction between that case and the case at bar."

■ Although Victor Minkler's title in the assets and chattels he received from Glen Minkler was voidable as to creditors of Glen Minkler, he could pass good title to a bona fide purchaser for value. What was the effect then of his

transfer to the Minkler-Rodgers Motor Company? We believe this situation is analogous to that in which one of the partners in an existing partnership obtains chattels or assets through fraud while *not* acting within the scope of his employment. If the chattels or assets, fraudulently obtained, are subsequently used in the business of the partnership, the other partners are not liable for the value of such assets or chattels unless they had actual knowledge of the fraudulent origin of the property. But, if the property remains intact or identifiable while in the hands of the partnership, the claimant may follow the property into the hands of the partnership and recover. See 1 Partners and Partnerships, Barrett & Seago (1956), 478-482, § 6.7; see, also, *Randall v. Knevals* (1898), 50 N. Y. S. 748, 27 App. Div. 146; affirmed 161 N. Y. 632, 57 N. E. 1122.

The trial court made no finding that Rodgers entered the partnership with knowledge of the voidable nature of Victor Minkler's title to the assets and chattels. In the absence of such knowledge, Rodgers stands as a bona fide purchaser for value as to respondent. He is not personally liable for the value of the assets received by Victor Minkler from Glen Minkler. The judgment of the trial court must be modified accordingly.

Respondent is entitled to satisfy his judgment from the assets and chattels which are presently in the possession of the Minkler-Rodgers Motor Company, and which can be traced to the transfer from Glen Minkler. In the event such assets and chattels are insufficient to satisfy the judgment, respondent is entitled to satisfy his judgment from Victor Minkler and his marital community. It is so ordered.

HILL, C. J., MALLERY, WEAVER, and OTT, JJ., concur.

March 6, 1958. Petition for rehearing denied.